UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

UNITED STATES OF AMERICA PLAINTIFF

v. CRIMINAL NO. 4:23-CR-00034-GNS

DAVID SMITH DEFENDANT

# SENTENCING MEMORANDUM
***-Electronically Filed-***

The United States of America, by counsel, files this memorandum in support of the Defendant's sentencing which is currently scheduled for December 5, 2024. The United States has reviewed the final presentence investigation report (PSR) and has no objections. The United States believes there is one objection to the PSR and believes that objection can be resolved from the facts in the PSR. The United States does not intend on calling any witnesses at the hearing but will have a witness present to testify if necessary. The United States will follow the plea agreement and recommend that a Guideline sentence of 30-months in prison be imposed, followed by a term of supervised release.

## Guideline Calculation

The United States agrees with the offense conduct in the PSR at paragraphs 11-27 (DN 29, at 105-107). The total offense level is 17 and the Defendant has a criminal history category of I (Id., at 109-110). When paired together, a total offense level 17 and a criminal history category I yield a Guideline range of 24-30 months in prison (Id., at 113). The United States has no objection to this calculation.

However, the United States would note that this calculation does not reflect what it believes the Guideline would be if the Defendant was sentenced in accordance with the 2023/2024 version of the Guidelines (Id., at 115). If the Defendant was sentenced in accordance with those Guidelines,

then the United States believes the Defendant's total offense level would have increased to 24. This increase would result from the application of a higher base offense level of 14 (2K2.1(a)(6)) along with an additional 5-level enhancement for trafficking in firearms (2K2.1(B)(5)). The resulting Guideline range with that new calculation would be 51-63 months in prison.

**Objection to Number of Firearms**

The Defendant has objected to a Guideline enhancement for the offense involving between 100-199 firearms. The Defendant claimed he was just "boasting" when he admitted that he sold 15-25 guns per day. However, it is not unusual for courts to rely upon statements made by defendants to support Guideline enhancements. In the drug context, courts routinely derive a reasonable drug quantity estimate from a defendant's statements alone. See United States v. Huffman, 461 F.3d 777, 787 (6th Cir. 2006). In the case of firearms, courts have looked at the facts surrounding the discovery of multiple firearms to determine what firearms were involved in a crime. United States v. Kish, 424 F. App'x 398, 409 (6th Cir. 2011). Even co-conspirator statements can satisfy the enhancement. See United States v. Statham, 581 F.3d 548, 552–53 (7th Cir. 2009).

In this case, the Defendant admitted that he sold approximately 15-25 guns per day, and that he had previously sold 28 firearms (DN 29, at 106). The Court does not have to take the Defendant at his word, as the evidence recovered in this case supports a number possibly higher than 200 guns. The Defendant sold 13 firearms to ATF (DN 209 at 105-107) and at least 29 firearms had been recovered from crime scenes in other states (DN 29, at 107). Additionally, over 100 firearms were recovered from the Defendant's home (DN 29, at 107).

While the Defendant may claim they were for personal use, many of the firearms had tags attached to them which match logbooks the Defendant kept. (Exhibit A, Photos of Guns). Several logbooks were also recovered from the Defendant's residence titled "Handguns", "Rifles", and "Shotguns". The United States has tendered with this memorandum excepts from each book for

the Court's review. (Exhibit B, Excerpts from Logbooks). These excerpts are only an example of the entries in each book, and the United States believes there were over 1,200 individual listings throughout all these books. Additionally, ATF was able to locate entries for the firearms it purchased from the Defendant and matched those with listings in the "Handgun" logbook. (Exhibit C, ATF Notes). These listings appeared to show a "profit" earned on the guns. Finally, the Defendant had Facebook listings for multiple firearms on a gun trading Facebook group. (Exhibit D, ROI). Considering the multitude of other entries that match guns not recovered by ATF, with the purchase price on one side and sale price on the other, it is safe to say that at least 100 firearms were sold by the Defendant.

Thus, given the ongoing nature of the Defendant's crime, his admissions, and the number of guns recovered and how they were recovered, there is a preponderance of the evidence to support the 8-level enhancement for the number of firearms. Therefore, any objection to this enhancement should be overruled.

## Sentencing Factors

In June 2022, Congress enacted 18 U.S.C. § 933 which specifically criminalized the transfer of a firearm to any person that the transferor knew, or should have reason to know, would use the gun to commit a crime, carry the gun to commit a crime, or whose mere possession was a crime. 18 U.S.C. § 933(a). The implementation of this new statutes makes sense, considering more than 68,000 illegally trafficked firearms came through unlicensed dealers. Associated Press, "ATF: 68,000 guns were illegally trafficked through unlicensed dealers over 5 years", https://www.npr.org/2024/04/05/1242972470/atf-illegally-trafficked-firearms. That number reflects 54% of the illegally trafficked firearms in the U.S. between 2017 and 2021. Id. Considering the conduct that statute is aimed to punish, the Defendant's crimes make him a "poster child" for the new law.

First, the Defendant was informed in 2022 that his conduct would be a violation of the law and that he needed a license to sell firearms (DN 29, at 105). This was after five of the Defendant's firearms had already been recovered at crime scenes in Illinois and Wisconsin (DN 29, at 105). Despite being "warned" about his criminal behavior, the Defendant continued to sell firearms without a license, and firearms he had purchased continued to wind up at crime scenes in Wisconsin and Illinois (DN 29, at 105). Approximately one year after being "warned", the Defendant sold 13 firearms to a person who told the Defendant they could not pass a background check, they intended on re-selling the firearms, and if they were caught with a firearm they would be charged as a habitual offender (DN 29, at 105). Did this dissuade the Defendant? No, instead the Defendant advised the person that the Defendant could obtain machinegun conversion devices, told the person how to make money selling firearms, and even attempted to help the person get into selling pills (DN 29, at 105-106).

Second, the Defendant was selling firearms on the scale of an actual licensed gun dealer. By his own admission, the Defendant was selling 15-25 guns per day (DN 29, at 105). That "boast" seems more likely to be the truth, considering several logbooks were recovered from the Defendant's home which contained notations of pricing for firearms the Defendant purchased, and then pricing of the guns when sold. (Exhibit B, Excerpts from Logbooks). ATF verified this by comparing these logbooks with the purchases it made in 2023. (Exhibit C, ATF Notes). And in total, there were over 1,200 individual firearms noted in multiple different logbooks. Additionally, 29 firearms that the Defendant sold have been recovered from crime scenes in other states (DN 29, at 107).

Considering these facts, there is no question that the Defendant's behavior is the exact type of behavior 18 U.S.C. § 933 aims to punish. His conduct was dangerous, as evidenced by the firearms winding up at various crime scenes. Additionally, his conduct continued after being

"warned." Such blatant disregard for the law warrants a sentence of imprisonment. And the United States believes such conduct deserves a sentence at the high-end of the Guidelines.

Finally, as mentioned above the Defendant's Guideline does not reflect what the next defendant's Guideline will be for similar crimes. As noted in the PSR, due to the amendment date of the Guidelines, the Defendant is sentenced in accordance with Guidelines that do not account for a conviction under 18 U.S.C. § 933 (DN 29, at 115-116). Thus, future defendants responsible for similar conduct will be facing much higher Guideline calculations than the Defendant. To avoid unwarranted disparities, a sentence of 30-months in prison is appropriate. Especially considering that the average sentence imposed across the country according to the Judiciary Sentencing Information (JSIN) data for a Guideline range calculated pursuant to the amended Guidelines (51-63 months) would be 41-months in prison. (https://jsin.ussc.gov/analytics/saw.dll?Dashboard).

## CONCLUSION

For the reasons set forth herein, the United States respectfully requests that the Court accept the parties' plea agreement and impose a sentence of 30-months imprisonment, followed by a term of supervised release.

Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney

*/s/ Mark J. Yurchisin II*

Mark J. Yurchisin II
Assistant U.S. Attorney
241 E. Main St., Ste. 305
Bowling Green, KY 42101
Phone: (270) 781-4438
E-Mail: mark.yurchisin@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2024, I electronically filed a copy of the above with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Mark J. Yurchisin II*
Mark J. Yurchisin II
Assistant U.S. Attorney